**Affirmed and Memorandum Opinion filed August 30, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-00490-CV

### IN THE INTEREST OF B.J.R., A CHILD

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2011-00176J**

## M E M O R A N D U M   O P I N I O N

In one issue, E.E.R., the mother of B.J.R., contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the child's best interests. We affirm.

I

B.J.R. was born to E.E.R. in 2008. In January 2011, the Department of Family and Protective Services (DFPS) took B.J.R. into protective custody and placed her with E.E.R.'s mother after an allegation of abuse and neglect. The trial court ordered E.E.R. to comply with DFPS's family-service plan, but she did not complete the plan's

requirements. The family-service plan required, among other things, that E.E.R. attend parenting classes and group counseling, submit to random drug tests, keep the caseworker notified of any changes in her address or telephone numbers, and maintain employment and appropriate housing. E.E.R. completed a parenting class and obtained work, but tested positive for drugs three times between March and November of 2011. She did not complete any other required services.

The case was tried to the court on January 10, 2012. E.E.R. did not appear. E.E.R.'s counsel stated that she had been unable to contact E.E.R. and orally requested a continuance, which the trial court denied. An alleged biological father and an unknown father also were represented by counsel but did not appear.

The only witness to testify was B.J.R.'s current caseworker, Schrell Atkinson. Atkinson testified that B.J.R.'s placement with the maternal grandmother was going very well and was meeting the child's physical and emotional needs. Atkinson also testified that the child, who was then three years old, had no special needs and was "developmentally on target." The goal for B.J.R. was for her grandparents to adopt her.

Atkinson stated that B.J.R. came into DFPS's care in part due to "medical neglect and physical abuse" stemming from domestic violence and an untreated scratch or mark on the child's cheek. She also explained that B.J.R. was removed and placed with her grandparents when E.E.R. began testing positive for drugs. Atkinson testified that the family-service plan and the court's temporary orders required E.E.R. to remain drug free to obtain her child's return; nevertheless, E.E.R. did not comply with this requirement and tested positive for drugs several times.

The trial court's orders and family-service plan required, among other things, that E.E.R. participate in a DFPS-provided substance-abuse assessment, submit to random drug tests, attend weekly Narcotics Anonymous meetings, and complete a drug-treatment program. The drug-test results admitted into evidence showed that E.E.R. tested positive for marijuana in May and July 2011, and cocaine in November 2011.

Atkinson testified that DFPS was requesting that the trial court terminate her parental rights based on subsection (O) of Family Code section 161.001(1)[1] because E.E.R. failed to comply with the court-ordered actions necessary to obtain the return of her child. When asked why termination would be in B.J.R.'s best interest, Atkinson explained:

> Because mom continues to participate in the same activities. She's not been supportive of the child. She's not here today. She's moved several times. We've had a difficult time locating her. She's not been stable. She's not been contactable as even her attorney has said. And she just hasn't proven to us that she can provide a stable home environment for the child.

Atkinson also testified that an earlier temporary order provided that E.E.R. would be allowed to visit B.J.R. if she tested negative for drugs, but E.E.R. never did so. Atkinson requested that DFPS be named the child's permanent managing conservator to facilitate B.J.R.'s adoption by her grandparents.

On cross-examination by E.E.R.'s counsel, Atkinson acknowledged that she knew E.E.R. had moved from the last address DFPS had for her, but denied that DFPS had been provided a copy of E.E.R.'s lease. Atkinson explained that E.E.R. did not provide her new address; Atkinson had to find it by "going to the leasing office." One week before the trial, E.E.R. called Atkinson and gave her new address, after Atkinson had already obtained it from the leasing office. E.E.R. explained that she forgot to tell Atkinson she had moved. Atkinson and E.E.R. did not discuss the upcoming trial date or whether E.E.R. wanted her child returned to her. Atkinson further testified that during the phone call, E.E.R. "indicated that she would participate in services" and "wanted to

---

[1] Subsection (O) authorizes the trial court to order termination if the court finds by clear and convincing evidence that the parent:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Tex. Fam. Code § 161.001(1)(O).

continue working with the agency." E.E.R. also said that she was doing "domestic work," but she did not provide the name of her employer or any other information about her employment.

On further cross-examination by the attorney ad litem for B.J.R., Atkinson acknowledged that she made all the appropriate referrals for the services outlined in the family-service plan and informed E.E.R. of DFPS's expectations for her completion of the services. Atkinson testified that even though E.E.R. agreed to those services, she did not complete them. Atkinson believed E.E.R. had not completed any services other than a parenting class. Atkinson also testified that she had received a letter of reference from an employer stating that E.E.R. was doing temporary work for him, but when she contacted the employer she learned that E.E.R. was no longer employed there. Atkinson also expressed the opinion that E.E.R. has had sufficient time to "work the services" and there was no reason why B.J.R.'s adoption by her grandparents should not go forward.

Counsel for E.E.R. offered several exhibits which were admitted over objection. Among them, the employer's letter stating that E.E.R. was performing temporary work for his company, a parenting-class attendance record indicating that E.E.R. completed a "communication" class,[2] a copy of an apartment lease in E.E.R.'s name, and a letter from an acquaintance who stated that E.E.R. had been doing well until her parents "called CPS on her to take [B.J.R.] away." Also admitted was a letter written by E.E.R. on July 7, 2011, in which she professed her love for her child and admitted that "smoking" was a mistake. She also stated that she and her husband had stable jobs and a two-bedroom apartment.

After hearing closing arguments, the trial court granted DFPS's request that all parental rights to B.J.R. be terminated and DFPS be named sole managing conservator.

---

[2] The communication class appears to be one of eight parenting classes E.E.R. was required to complete.

II

A

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). To terminate a parent-child relationship, a trial court must find by clear and convincing evidence that (1) termination is in the best interest of the child, and (2) the parent committed one or more of the acts specifically named in Family Code section 161.001. Tex. Fam. Code § 161.001. "Clear and convincing evidence" is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007.

When conducting a legal- and factual-sufficiency review in a parental-rights-termination case, we must determine whether the evidence is such that the fact finder reasonably could have formed a firm belief or conviction that its findings were true. *See In re J.F.C.,* 96 S.W.3d 256, 265–66 (Tex. 2002); *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the fact finder's findings. *In re J.F.C.,* 96 S.W.3d at 266. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that does not support the finding. *Id.* This does not mean, however, that we disregard all evidence that does not support the finding, because disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.*

In reviewing the factual sufficiency of the evidence, we must give due deference to the fact finder's findings and not supplant the judgment with our own. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006). We examine all of the evidence, giving due consideration to evidence that the fact finder could have reasonably found to be clear and convincing. *Id.* If, in light of the entire record, the disputed evidence that a reasonable

5

fact finder could not have credited in favor of the finding is so significant that the fact finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *Id.*; *In re J.F.C.*, 96 S.W.3d at 266.

On appeal, E.E.R. does not challenge the legal and factual sufficiency of the evidence to support the trial court's finding authorizing termination under Family Code section 161.001(1)(O); she contends only that the evidence is legally and factually insufficient to support the trial court's finding that termination was in B.J.R.'s best interest.

B

A strong presumption exists that the best interest of the child is served by keeping the child with its natural parent, and the burden is on DFPS to rebut that presumption. *In re S.M.L.*, 171 S.W.3d 472, 480 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The factors the trier of fact may use in a termination case to determine the best interest of the child include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976); *In re S.M.L.,* 171 S.W.3d at 480; *In re U.P.,* 105 S.W.3d at 230; *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating parent's willingness and ability to provide the child with a safe environment).

This list is not exhaustive, nor is evidence required on all nine of the factors to support a finding terminating a parent's rights. *Holley,* 544 S.W.2d at 372; *In re U.P.,* 105 S.W.3d at 230. On the other hand, the presence of scant evidence relevant to each

*Holley* factor will not support such a finding. *In re C.H.*, 89 S.W.3d at 27. Evidence proving one or more of the statutory grounds for termination also may be probative in determining that termination is in the best interest of the child. *Id.* at 28; *In re A.A.A.,* 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

E.E.R. argues DFPS produced scant evidence to overcome the strong presumption in favor of preserving the parent-child relationship. E.E.R. also contends most of the *Holley* factors favor maintaining that relationship.

E.E.R. acknowledges that her drug use and failure to complete the family-service plan "certainly is a factor that supports a termination finding on best interest grounds," but argues that other evidence weighs against termination. She points to her letter in which she stated that she was very young when she gave birth to B.J.R. and that B.J.R. was "[her] life." She claims to have recognized that "smoking" was a mistake and explains that she only started when her child was taken away. She also argues that at the time of trial, she was doing domestic work and had leased an apartment. Additionally, E.E.R. contends the record contains no evidence of the relationship between her and her daughter, the frequency of E.E.R.'s visits with her daughter, any financial assistance E.E.R. provides, the effect of terminating the parent-child relationship on the daughter, or the fitness of the maternal grandparents to adopt the daughter. At most, E.E.R. contends the evidence may be sufficient to support the appointment of DFPS as B.J.R.'s managing conservator but it is insufficient to support terminating her parental rights. We disagree.

We turn first to the evidence of B.J.R.'s desires, emotional and physical needs, and any emotional or physical danger to her. At the time of trial B.J.R. was three years old. Although there was no evidence that the child had bonded with E.E.R. or the grandparents, Atkinson testified that B.J.R. was doing "very well" with her grandparents, had no special needs, and was developmentally "on target." Atkinson also testified that B.J.R. came into DFPS's care as a result of medical neglect and physical abuse by E.E.R. and her husband, and DFPS removed B.J.R. from E.E.R.'s care and placed her with her grandparents after E.E.R. began testing positive for illegal drugs. E.E.R. complains that

7

Atkinson failed to offer any facts to explain the nature of the neglect or abuse and merely characterized B.J.R.'s injuries as "unexplained" without testifying whether she asked E.E.R. how they occurred. But E.E.R. presented no controverting evidence explaining the injuries or disputing the allegation of abuse or neglect. Further E.E.R. tested positive for illegal drug use as late as two months before trial, and she offered no evidence that she had ceased using drugs or taken any steps to curtail her drug use.

Concerning E.E.R.'s parental abilities, she maintains that she could offer stable housing for B.J.R. because she was employed and had an apartment. She also points out that she completed the "communication" portion of her required parenting classes. But E.E.R. failed to complete any of the other requirements of the family-service plan, including remaining drug free. Further, Atkinson testified that termination would be in B.J.R.'s best interest because E.E.R. continued to engage in the same activities, was not "supportive" of B.J.R., did not appear for trial, moved several times, was difficult to locate, and had not been stable or proven that she could provide a stable environment for B.J.R. She also opined that E.E.R. had had sufficient time to "work the services" and she knew of no reason why B.J.R.'s adoption by her grandparents should not proceed.

E.E.R. also asserts there was no evidence regarding programs that might be available for either the grandparents or her to promote B.J.R.'s best interest, and points out that Atkinson acknowledged that E.E.R. told her she wanted to continue working DFPS. The evidence shows, however, that E.E.R. was ordered to complete services including parenting classes and attending counseling and a drug-treatment program. Of these, E.E.R. completed only one of eight parenting classes she was required to attend. She did not complete parenting classes on stress management, self-worth, child development, problem solving, discipline, health and safety, or "tough topics for kids." E.E.R. presented no evidence she had completed any other required classes that were available. Atkinson also testified that she made the appropriate referrals for E.E.R. and informed her of the agency's expectations, but E.E.R. failed to complete the services even though she agreed to do so.

Concerning acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, E.E.R. acknowledges that testing positive for marijuana two times and cocaine one time after DFPS was appointed B.J.R.'s temporary managing conservator "certainly is a factor that supports a termination finding on best interest grounds." But she points to her letter in which she claims that she only began "smoking" after B.J.R. was taken away and she knew it was a mistake. She also professed her love for B.J.R., stating, "She is my life." E.E.R. also contends that the fact that she was working and had an apartment shows that she was making efforts to improve her life. Nevertheless, E.E.R.'s positive drug tests undermine the intentions expressed in her letter. The second drug test in which she tested positive for marijuana was taken on July 7, 2011, the same day she wrote her letter. The last positive drug test was obtained in November 2011, just two months before trial, and this time showed that E.E.R. tested positive for cocaine.

Finally, we turn to evidence of the plans for the child by the individuals or agency seeking custody and the stability of the home or proposed placement. A parent without stability, income, or a home is unable to provide for a child's physical and emotional needs. *See In re C.A.J.*, 122 S.W.3d 888, 894 (Tex. App.—Fort Worth 2003, no pet. (determining evidence was sufficient to support best-interest finding when mother admitted being unable to care for child and having no stable source of income or permanent home). Here, although E.E.R. claims that she has stable housing and employment, the record does not support these claims. For example, when Atkinson contacted E.E.R.'s purported employer, she learned that E.E.R. no longer worked there. Further, Atkinson testified that E.E.R. has moved several times and that DFPS—as well as E.E.R.'s own attorney—has had difficulty locating her.[3] On the other hand, as discussed above, the grandmother is providing a stable and appropriate home for B.J.R. and is interested in adopting the child, providing her with the permanence that she needs. E.E.R. concedes that "[t]he current placement with the maternal grandparents is stable

---

[3] Although a letter written by E.E.R. in July 2011 indicated that E.E.R. had a job and stable housing, this letter was written months before trial, and nothing in the record supports these claims.

and appropriate." The need for permanence is paramount in considering a child's present and future needs. *In re M.C.H.*, No. 14-12-00103-CV, 2012 WL 1795123, at \*4 (Tex. App.—Houston [14th Dist.] May 17, 2012, no pet.) (mem. op.).

Viewing all the evidence in the light most favorable to the judgment, we hold that a fact finder could have formed a firm belief or conviction that termination of E.E.R.'s parental rights was in B.J.R.'s best interest. *See* Tex. Fam. Code § 161.001(2); *In re J.F.C.*, 96 S.W.3d at 265–66. Viewing the same evidence in a neutral light, the disputed evidence is not so significant as to prevent a fact finder from forming a firm belief or conviction that termination of E.E.R.'s parental rights was in B.J.R.'s best interest. *See* Tex. Fam. Code § 161.001(2); *In re H.R.M.*, 209 S.W.3d at 108. Accordingly, the evidence is legally and factually sufficient to support the trial court's finding that termination of E.E.R.'s parental rights is in B.J.R.'s best interest. We therefore overrule E.E.R.'s issue.

\* \* \*

We affirm the trial court's judgment.

/s/     Jeffrey V. Brown
        Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.

10